**BAKER & HOSTETLER LLP**
Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Counsel for Plaintiff
Michael Kors, L.L.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL KORS, L.L.C.,<br><br>                    Plaintiff,<br><br>          -against-<br><br>MULBERRY STREET PROPERTIES CORP.,<br>CHOWDHURY TRADERS LLC, TOP WINSTAR<br>INC., LITTLE ITALY GIFTS INC., and JOHN<br>DOE and/or JANE DOE,<br><br>                    Defendants. | CIVIL ACTION NO.<br><br>15 CV _____ |

## COMPLAINT

Plaintiff Michael Kors, L.L.C. ("MK" OR "Plaintiff") by and through its undersigned counsel,

for its Complaint against Mulberry Street Properties Corp. ("Mulberry Properties"), Chowdhury

Traders LLC ("Chowdhury Traders"), Top Winstar Inc. ("Winstar"), Little Italy Gifts Inc.

("Little Italy Gifts"), and John Doe and/or Jane Doe (Mulberry Street Properties Corp. together

with Chowdhury Traders LLC, Top Winstar Inc., Little Italy Gifts Inc., John Doe and/or Jane

Doe collectively "Defendants") alleges as follows:

## STATEMENT OF THE CASE

1.     Plaintiff seeks monetary and injunctive relief against Defendants for numerous causes of action, including but not limited to, (i) direct and contributory trademark counterfeiting, in violation of 15 U.S.C. § 1114; (ii) direct and contributory trademark infringement, in violation of 15 U.S.C. § 1114; (iii) direct and contributory false descriptions/false designations of origin, in violation of 15 U.S.C. § 1125; and (iv) knowingly permitting leased real property to be used for an unlawful trade or business, in violation of N.Y. Real Prop. L. § 231(2).

2.     New York City's Canal and Mulberry Streets have long been a major distribution hub for counterfeit goods that are sold throughout the United States.  Wholesale and retail sales of counterfeit goods occur frequently and regularly from locations along these streets and their neighboring areas. The Plaintiff in this case, and trademark holders in general, has been plagued by the sale and distribution of counterfeit goods at locations on Canal and Mulberry Streets and their environs for years. To combat this illegal activity and protect its world-famous and valuable names, reputations and trademarks, Plaintiff and other trademark holders have, at great expense, commenced and led enforcement efforts in the Canal Street and Mulberry Street areas. They have worked with law enforcement in operations against the individuals and entities selling counterfeit goods bearing their trademarks. Arrests for trademark counterfeiting have been made routinely by the New York City Police Department and by other agencies all over Canal and Mulberry Streets. The Mayor's Office of Special Enforcement for the City of New York has conducted numerous enforcement operations along Canal and Mulberry Streets and the surrounding areas against both the sellers of counterfeit goods and the property owners that lease them the space and thereby enable the ongoing sale of counterfeit merchandise.

607074217.1

3.     Chowdhury Traders LLC, Top Winstar Inc., Little Italy Gifts Inc., and John and/or Jane Doe Defendants (the "Tenant Defendants") in this action have sold, offered for sale and distributed counterfeit goods bearing the Plaintiff's Federally Registered Trademarks (defined *infra*.) for years. Defendant Mulberry Properties, the owner of the property from where these sales have taken place, continues to allow its premises to be used as a safe haven and marketplace from which counterfeiters can sell their wares. Mulberry Properties apparently sanctions these counterfeiters despite numerous notices from Plaintiff. Mulberry Properties' empowering of these counterfeiters cannot be condoned, and it must be held accountable for its complicity in these illegal activities.

### JURISDICTION AND VENUE

4.     This Court has original jurisdiction over the subject matter of this civil action pursuant to 15 U.S.C. § 1051, et seq., 1114(1), § 1121 and 28 U.S.C. §§ 1331 and 1338.

5.     This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.     This Court may exercise personal jurisdiction over Defendants pursuant to § 301 of the New York Civil Practice Law and Rules ("CPLR"), because Defendants are domiciled within the State of New York.

7.     Alternatively, this Court may exercise personal jurisdiction over Defendants pursuant to CPLR § 302(a)(1), (2) and (4), because the acts about which Plaintiff complains arise from Defendants' transaction of business within New York State and/or agreement to supply

goods in New York State; Defendants' commission of a tortious act within New York State; and/or Defendants' ownership, use or possession of real property situated within New York State.

8.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims alleged by Plaintiff occurred within the City, State and County of New York.

## THE PARTIES

9.     Plaintiff Michael Kors, L.L.C. is a Delaware Limited Liability Company with its principal place of business located at 11 West 42nd Street, New York, New York 10036.

10.     Defendant Mulberry Street Properties Corp. is a New York Corporation.  The address on file with the New York Department of State for the purpose of service of process is 51-01 Grand Avenue, Maspeth, New York 11378.  Mulberry Properties is the owner of the properties located at 110-112 Mulberry Street, New York, New York, which are essentially contained within the same building.

11.     Defendant Chowdhury Traders LLC is a New York Limited Liability Company. The address on file with the New York Department of State for the purpose of service of process is 30-39 59th Street, Woodside, New York 11377.  Upon information and belief, it operates a store at 112 Mulberry Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks at this location.

12.     Defendant Top Winstar Inc. is a New York Corporation.  The address on file with the New York Department of State for the purpose of service of process is 110 Mulberry Street,

607074217.1

New York, New York 10013. Upon information and belief, it operates a store at 110B Mulberry Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks at this location.

13.     Defendant Little Italy Gifts Inc. is a New York Corporation. The address on file with the New York Department of State for the purpose of service of process is 112A Mulberry Street, New York, New York 10013. Upon information and belief, it operates a store at 112A Mulberry Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks at this location.

14.     John Doe or Jane Doe operates a store at 110A Mulberry Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks at this location.

15.     The identity of the John or Jane Doe is not presently known, and the Complaint will be amended, if appropriate, to include the name or names of said individuals when such information becomes available.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.     PLAINTIFF AND ITS BUSINESS

16.     MK is a global luxury lifestyle brand led by renowned, award-winning designer Mr. Michael Kors.

607074217.1

17.     Since launching his namesake brand over 30 years ago, Michael Kors has featured distinctive designs, materials and craftsmanship with a jet-set aesthetic that combines stylish elegance and a sporty attitude. Mr. Kors' vision has taken the Company from its beginnings as an American luxury sportswear house to a global accessories, footwear and apparel company with a presence in approximately 100 countries.

18.     MK is the owner of the trade name "Michael Kors" which Plaintiff has used to identify itself and its products in the United States for over 30 years.

19.     MK is the owner of the entire right, title and interest in and to, *inter alia*, the valid, subsisting trademarks and uncanceled trademark registrations on the Principal Register of the United States Patent and Trademark Office which include, but are not limited to, the following:

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
|  | December 18, 2007 | 3356080 | Handbags and small leather goods, namely, wristlet bags. |
| **MICHAEL KORS** | June 4, 1996 | 1977507 | Ladies' clothing; namely, dresses, jackets, pants, skirts, shirts, blouses, shorts, sweaters, coats, swimwear. |
| **MICHAEL KORS** | April 1, 1997 | 2049326 | Clothing for use by women; namely, anoraks; aprons; ascots; babushkas; bandanas; bathrobes; belts; blazers; blousons; bodysuits; boleros; boots; boxer shorts; brassieres; briefs; caftans; camisoles; capes; caps; cardigans; chemises; clogs; fur coats; suit coats; corselets; culottes; earmuffs; galoshes; garter belts; girdles; gloves; nightgowns; halter tops; hats; headbands; hosiery; jeans; jogging suits; jumpers; jumpsuits; kerchiefs; kimonos; leggings; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; negligees; nightshirts; overalls; overshoes pajamas; panties; pantsuits; pantyhose; parkas; |

6

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | pedal pushers; peignors; pinafores; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; stockings; stoles; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; underpants; vests; vested suits; and warm-up suits; and, clothing for use by men; namely, anoraks; ascots; bandanas; bathrobes; belts; blazers; boots; boxer shorts; briefs; capes; caps; cardigans; clogs; fur coats; suit coats; earmuffs; galoshes; gloves; hats; headbands; hosiery; jeans; jogging suits; kerchiefs; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; nightshirts; overalls; overshoes; pajamas; pantsuits; parkas; pedal pushers; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; vests; vested suits; and warm-up suits. |
| MICHAEL KORS | December 18, 2001 | 2520757 | Handbags, billfolds, credit card cases, key cases, and tote bags. |
| MICHAEL KORS | December 18, 2001 | 2520758 | Eyeglasses, eyeglass cases. |
| MICHAEL KORS | March 12, 2002 | 2547039 | Retail store services in the fields of clothing, jewelry and clothing accessories. |
| MICHAEL KORS | April 22, 2003 | 2708259 | Cosmetics; namely, body lotion, cologne, perfume, and shower gel. |
| MICHAEL KORS | October 17, 2006 | 3160981 | Watches. |
| MICHAEL KORS | November 8, 2011 | 4052748 | Jewelry. |
| MICHAEL KORS | May 14, 2013 | 4334410 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |
| MICHAEL KORS ISLAND | September 19, 2006 | 3146355 | Fragrance products, namely eau de parfum. |
| MICHAEL MICHAEL KORS | April 11, 2006 | 3080631 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, carrying cases, namely, attaché cases; bags, namely, tote bags; luggage; suitcases; handbags; purses; wallets; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, t-shirts, tuxedos, vests, ties; |

7

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear; footwear and headwear; belts. |
| MICHAEL MICHAEL KORS | November 8, 2011 | 4052752 | Jewelry and watches. |
| MICHAEL MICHAEL KORS | May 14, 2013 | 4334409 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |
| MK MICHAEL KORS | May 27, 2008 | 3438412 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, eye shades, protective eye wear and eye wear for sports; handbags; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, T-shirts, tuxedos, vests, ties; undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear, footwear and headwear; belts. |
| MK MICHAEL KORS | November 18, 2008 | 3535310 | Watches. |

(hereinafter collectively referred to as the "MK Registered Trademarks"). Copies of the MK registrations, as listed on the U.S. Patent and Trademark Office website, are attached as Ex. A.

20.     MK is also the owner of any common law trademarks associated with its products.

21.     MK's Registered Trademarks are in full force and effect and have been used for years on and in connection with MK's merchandise.

22.     MK's Registered Trademarks and the goodwill of the business of MK in connection with which the MK Registered Trademarks are used has never been abandoned and are in full force and effect. MK intends to preserve and maintain its rights with respect to its Registered Trademarks.

607074217.1

II.    **DEFENDANTS AND THEIR BUSINESSES**

A.    *The Tenant Defendants*

23.    Upon information and belief, the Tenant Defendants have infringed, continue to infringe and threaten to further infringe Plaintiff's Registered Trademarks by manufacturing, distributing and selling counterfeit merchandise. The counterfeit products which are being manufactured, distributed and sold by the Tenant Defendants bear copies of the Plaintiff's Registered Trademarks. The display of such counterfeit and infringing products by the Tenant Defendants is an unauthorized public display of products bearing the Plaintiff's Registered Trademarks. The marketing of such counterfeit and infringing products by the Tenant Defendants is an unauthorized distribution of copies of products bearing the Plaintiff's Registered Trademarks.

24.    Long after Plaintiff's use and registration of Plaintiff's Registered Trademarks, the Tenant Defendants, on information and belief, commenced the manufacture, distribution, and sale of merchandise bearing counterfeits and infringements of Plaintiff's Registered Trademarks as those trademarks appear on Plaintiff's products and as shown in the U.S. Trademark Registrations attached to this Complaint as Ex. A.

25.    Upon information and belief, the activities of the Tenant Defendants complained of herein constitute willful and intentional infringement of Plaintiff's Registered Trademarks, are in total disregard of Plaintiff's rights, and were commenced and have continued in spite of the Tenant Defendants' knowledge that the use of any of Plaintiff's Registered Trademarks, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiff's rights. The use by the Tenant Defendants of copies of Plaintiff's Registered Trademarks has been without Plaintiff's consent, is likely to cause confusion and mistake in the minds of the

607074217.1

purchasing public and, in particular, tends to and does falsely create the impression that the goods sold by the Tenant Defendants are authorized, sponsored, or approved by Plaintiff when, in fact, they are not.

### B.    *Defendant Mulberry Properties*

26.    Mulberry Properties is the owner of real properties located at 110-112 Mulberry Street, New York, New York 10013, which are situated in the middle of the east side of Mulberry Street in the borough of Manhattan. The property at 110 Mulberry Street actually consists of two separate store fronts known as 110A Mulberry Street and 110B Mulberry Street. The property at 112 Mulberry Street actually consists of two separate store fronts known as 112 Mulberry Street and 112A Mulberry Street.  Upon information and belief, 110-112 Mulberry Street are all within one building owned by Mulberry Properties. (110-112 Mulberry Street collectively referred to hereinafter as the "Property").

### Mulberry Street Range



607074217.1

27.     Upon information and belief, Mulberry Properties has owned the Property continuously since June 2009.

28.     Since as early as 2013, Mulberry Properties has had actual, specific knowledge that tenants or subtenants at the Property have been using the Property as a base of operations from which to sell counterfeit trademarked goods.

29.     Mulberry Properties has turned a blind eye to the activities of the Tenant Defendants on its Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Registered Trademarks are routinely sold.

### C.     *110A Mulberry Street*

30.     On August 29, 2013, Plaintiff conducted a civil seizure of counterfeit merchandise at 110A Mulberry Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 530 MK tags, 280 MK handbags, 88 MK watches, 88 pieces of MK jewelry, and 2 MK glasses.

31.     On or about September 12, 2013, Plaintiff's counsel sent a letter to Mulberry Properties notifying them of the August 29, 2013 civil seizure of counterfeit merchandise at 110A Mulberry Street.

32.     On or about October 10, 2013, Plaintiff's counsel sent a letter to Mulberry Properties requesting a response to the September 12, 2013 letter.

33.     On or about December 17, 2013, Plaintiff's counsel sent a letter to Mulberry Properties requesting a response to the September 12 and October 10 letters.

607074217.1

34.    On December 19, 2013, Plaintiff's counsel and Mulberry Properties exchanged correspondence with regards to the ongoing sale of counterfeit merchandise at 110A Mulberry Street.   Plaintiff's counsel sent copies of the seizure receipts and photographs of the seized counterfeit merchandise from the August 29, 2013 civil seizure.

35.    On or about January 8, 2014, Plaintiff's counsel sent a letter to Mulberry Properties requesting a response to the December 19, 2013 exchange and advising that the sale of counterfeit merchandise was still ongoing at 110 Mulberry Street.

36.    On or about January 10, 2014, Mulberry Properties sent a letter by certified mail and email to Plaintiff's counsel requesting further information about the civil seizures of counterfeit merchandise at 110 Mulberry Street.

37.    On or about January 14, 2014, Plaintiff's counsel sent an email to Mulberry Properties responding to its request for further information and requesting the status of any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 110A Mulberry Street.

38.    On or about March 13, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting a response to the January 14, 2014 email.

39.    On or about March 17, 2014, Mulberry Properties sent an email to Plaintiff's counsel denying its January 14, 2014 request that Mulberry Properties provide Plaintiff's counsel with information regarding any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 110A Mulberry Street.

40.    On or about May 8, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting information regarding the legitimacy of the civil seizures at 110A Mulberry Street.

607074217.1

41.     On or about May 16, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting a telephone meeting with Plaintiff's counsel.

42.     On May 27, 2014, Plaintiff's counsel and Mulberry Properties discussed the counterfeiting taking place at the Property.

43.     On or about June 12, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting an update on the status of any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 110A Mulberry Street.

44.     On or about June 26, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting a response to the June 12, 2014 email.

45.     On or about June 26, 2014, Mulberry Properties sent an email to Plaintiff's counsel notifying them that they are in discussions with the 110 Mulberry Street tenants to vacate.

46.     On May 15, 2015, Plaintiff conducted a civil seizure of counterfeit merchandise at 110A Mulberry Street seizing a significant quantity of counterfeit merchandise.    This civil seizure involved counterfeit merchandise bearing trademarks other than those of Plaintiff.

**D.     *110B Mulberry Street***

47.     On November 23, 2013, Plaintiff conducted a civil seizure of counterfeit merchandise at 110B Mulberry Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 55 MK watches.

48.     On or about December 17, 2013, Plaintiff's counsel sent a letter to Mulberry Properties notifying them of the November 23, 2013 civil seizure of counterfeit merchandise at 110B Mulberry Street.

607074217.1

49.     On December 19, 2013, Mulberry Properties sent a letter by certified mail and email to Plaintiff's counsel requesting proof of the November 23, 2013 civil seizure of counterfeit merchandise at 110B Mulberry Street.

50.     On or about December 19, 2013, Plaintiff's counsel sent a letter to Mulberry Properties responding to its request for proof of the November 23, 2013 civil seizure of counterfeit merchandise at 110B Mulberry Street.  Plaintiff's counsel enclosed copies of the seizure receipts and photographs of the seized counterfeit merchandise from the November 23, 2013 civil seizure.

51.     On or about January 8, 2014, Plaintiff's counsel sent a letter to Mulberry Properties requesting a response to the December 19, 2013 letter.

52.     On or about January 10, 2014, Mulberry Properties sent a letter by certified mail and email to Plaintiff's counsel requesting further information about the November 23, 2013 civil seizure of counterfeit merchandise at 110B Mulberry Street.

53.     On or about January 14, 2014, Plaintiff's counsel sent an email to Mulberry Properties responding to its request for further information and requesting the status of any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 110B Mulberry Street.

54.     On or about March 13, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting a response to the January 14, 2014 email.

55.     On or about March 17, 2014, Mulberry Properties sent an email to Plaintiff's counsel denying its January 14, 2014 request that Mulberry Properties provide Plaintiff's counsel

607074217.1

with information regarding any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 110B Mulberry Street.

56.    On or about May 8, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting information regarding the legitimacy of the civil seizures at 110B Mulberry Street.

57.    On or about May 16, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting a telephone meeting with Plaintiff's counsel.

58.    On May 27, 2014, Plaintiff's counsel and Mulberry Properties discussed the counterfeiting taking place at the Property.

59.    On May 30, 2014, Plaintiff dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 110B Mulberry Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for thirty U.S. Dollars ($30.00) and a counterfeit MK watch for thirty U.S. Dollars ($30.00).

60.    On or about June 12, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting an update on the status of any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 110B Mulberry Street and notifying them of the May 30, 2014 purchase of counterfeit items from 110B Mulberry Street.

61.    On or about June 26, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting a response to the June 12, 2014 email.

62.    On or about June 26, 2014, Mulberry Properties sent an email to Plaintiff's counsel notifying them that they are in discussions with the 110 Mulberry Street tenants to vacate.

63.      On December 22, 2014, Plaintiff dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 110B Mulberry Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK wallet for twenty U.S. Dollars ($20.00).

64.      On May 15, 2015, Plaintiff conducted a civil seizure of counterfeit merchandise at 110B Mulberry Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 51 MK watches.

E.      *112 Mulberry Street*

65.      On December 20, 2013, Plaintiff conducted a civil seizure of counterfeit merchandise at 112 Mulberry Street seizing counterfeit merchandise including, but not limited to, one MK watch.

66.      On or about January 8, 2014, Plaintiff's counsel sent a letter to Mulberry Properties notifying them of the December 20, 2013 civil seizure of counterfeit merchandise at 112A Mulberry Street.

67.      On April 25, 2014, Plaintiff conducted a civil seizure of counterfeit merchandise at 112 Mulberry Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 123 MK watches.

68.      On or about May 8, 2014, Plaintiff's counsel sent an email to Mulberry Properties notifying them of the April 25, 2014 civil seizure of counterfeit merchandise at 112 Mulberry Street.

607074217.1

69.    On or about May 8, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting information regarding the legitimacy of the April 25, 2014 civil seizure at 112 Mulberry Street.

70.    On or about May 16, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting a telephone meeting with Plaintiff's counsel.

71.    On May 27, 2014, Plaintiff's counsel and Mulberry Properties discussed the counterfeiting taking place at the Property.

72.    On or about June 12, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting an update on the status of any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 112 Mulberry Street.

73.    On or about June 26, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting a response to the June 12, 2014 email.

74.    On January 30, 2015, Plaintiff dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 112 Mulberry Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK bracelet for fifteen U.S. Dollars ($15.00).

75.    On February 5, 2015, Plaintiff dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 112 Mulberry Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of counterfeit MK earrings.

607074217.1

76.    On or about April 16, 2015, Plaintiff's counsel sent an email to Mulberry Properties to advise that the sale of counterfeit merchandise was still ongoing at 112 Mulberry Street.

77.    On April 29, 2015, Plaintiff dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 112 Mulberry Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of counterfeit MK earrings for fifteen U.S. Dollar ($15.00).

78.    On May 15, 2015, Plaintiff conducted a civil seizure of counterfeit merchandise at 112 Mulberry Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 81 MK watches, 36 MK glasses, and 36 MK cases.

**F.    *112A Mulberry Street***

79.    On November 7, 2013, Plaintiff conducted a civil seizure of counterfeit merchandise at 112A Mulberry Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 36 MK watches, 8 MK cases, and 6 MK glasses.

80.    On or about November 19, 2013, Plaintiff's counsel sent a letter to Mulberry Properties notifying them of the November 7, 2013 civil seizure of counterfeit merchandise at 112A Mulberry Street.

81.    On November 23, 2013, Plaintiff conducted a civil seizure of counterfeit merchandise at 112A Mulberry Street seizing counterfeit merchandise including, but not limited to, four MK watches.

607074217.1

82.     On or about December 17, 2013, Plaintiff's counsel sent a letter to Mulberry Properties requesting a response to the November 19, 2013 letter and notifying them of the November 23, 2013 civil seizure of counterfeit merchandise at 112A Mulberry Street.

83.     On December 19, 2013, Mulberry Properties' sent a letter by certified mail and email to Plaintiff's counsel requesting proof of the November 23, 2013 civil seizure of counterfeit merchandise at 112A Mulberry Street.

84.     On or about December 19, 2013, Plaintiff's counsel sent a letter to Mulberry Properties responding to its request for proof of the November 23, 2013 civil seizure of counterfeit merchandise at 112A Mulberry Street.  Plaintiff's counsel enclosed copies of the seizure receipts and photographs of the seized counterfeit merchandise from November 7, 2013 and November 23, 2013 civil seizures.

85.     On or about January 8, 2014, Plaintiff's counsel sent a letter to Mulberry Properties requesting a response to the December 19, 2013 letter.

86.     On or about January 10, 2014, Mulberry Properties sent a letter by certified mail and email to Plaintiff's counsel requesting further information about the civil seizures of counterfeit merchandise at 112A Mulberry Street.

87.     On or about January 14, 2014, Plaintiff's counsel sent an email to Mulberry Properties responding to its request for further information and requesting the status of any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 112A Mulberry Street.

88.     On or about March 13, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting a response to the January 14, 2014 email.

607074217.1

89.     On or about March 17, 2014, Mulberry Properties sent an email to Plaintiff's counsel denying its January 14, 2014 request that Mulberry Properties provide Plaintiff's counsel with information regarding any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 112A Mulberry Street.

90.     On or about May 8, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting information regarding the legitimacy of the civil seizures at 112A Mulberry Street.

91.     On or about May 16, 2014, Mulberry Properties sent an email to Plaintiff's counsel requesting a telephone meeting with Plaintiff's counsel.

92.     On May 27, 2014, Plaintiff's counsel and Mulberry Properties discussed the counterfeiting taking place at the Property.

93.     On or about June 12, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting update on the status of any action taken by Mulberry Properties against the tenant selling counterfeit trademarked goods at 112A Mulberry Street.

94.     On or about June 26, 2014, Plaintiff's counsel sent an email to Mulberry Properties requesting a response to the June 12, 2014 email.

95.     On February 5, 2015, Plaintiff dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 112A Mulberry Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for thirty U.S. Dollars ($30.00).

96.     On or about April 16, 2015, Plaintiff's counsel sent an email to Mulberry Properties to advise that the sale of counterfeit merchandise was still ongoing at 112A Mulberry Street.

607074217.1

97.    On May 15, 2015, Plaintiff conducted a civil seizure of counterfeit merchandise at 112A Mulberry Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 74 MK watches, five MK sunglasses cases, and two MK sunglasses.

## FIRST CAUSE OF ACTION

### TRADEMARK COUNTERFEITING AGAINST THE TENANT DEFENDANTS
### 15 U.S.C. § 1114

98.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

99.    The Tenant Defendants have knowingly advertised, promoted, distributed, sold and offered for sale goods bearing counterfeit versions of Plaintiff's Registered Trademarks from the Property.

100.    The Tenant Defendants' use of counterfeit versions of Plaintiff's Registered Trademarks in connection with the advertisement, promotion, distribution, sale and offer for sale of goods that do not originate from Plaintiff is likely to cause confusion, mistake and deception among consumers that the counterfeit goods originate from, are sponsored by, or associated with, Plaintiff.

101.    The Tenant Defendants' misconduct constitutes the intentional and willful use of counterfeit versions of Plaintiff's Registered Trademarks in connection with the sale, offering for sale, or distribution of goods, in violation of 15 U.S.C. §§ 1114(1).

102.    The Tenant Defendants' acts constitute trademark counterfeiting in violation of 15 U.S.C. 1114.

607074217.1

103.    Upon information and belief, in committing these wrongs, the Tenant Defendants intentionally and willfully intended to trade on the goodwill associated with Plaintiff's Registered Trademarks.

104.    Upon information and belief, in committing these wrongs, the Tenant Defendants acted willfully within the meaning of 15 U.S.C. § 1117(c)(2).

105.    Upon information and belief, the Tenant Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

106.    Upon information and belief, the Tenant Defendants intend to continue their infringing acts, unless restrained by this Court.

107.    The Tenant Defendants' acts damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

108.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting the Tenant Defendants from using Plaintiff's Registered Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from the Tenant Defendants all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by the Tenant Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

607074217.1

## SECOND CAUSE OF ACTION

### TRADEMARK INFRINGEMENT AGAINST THE TENANT DEFENDANTS
### 15 U.S.C. 1114

109.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

110.    Plaintiff's Registered Trademarks are nationally recognized, including within the Southern District of New York, as being affixed to goods and merchandise of the highest quality.

111.    The registrations embodying Plaintiff's Registered Trademarks are in full force and effect and Plaintiff has authorized responsible manufacturers to produce, and vendors to sell, merchandise with these trademarks.

112.    The Tenant Defendants' unauthorized use of Plaintiff's Registered Trademarks in interstate commerce and advertising constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods and are of the same quality as that assured by Plaintiff's Registered Trademarks.

113.    The Tenant Defendants' infringing use of Plaintiff's Registered Trademarks is without Plaintiff's permission or authority and is in total disregard of Plaintiff's rights to control their trademarks.

114.    The Tenant Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or is otherwise connected to or affiliated with the Tenant Defendants.

115.    Upon information and belief, the Tenant Defendants' acts are deliberate and intended to confuse the public as to the source of the Tenant Defendants' goods or services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill.

116.    As a direct and proximate result of the Tenant Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless the Tenant Defendants are restrained by this Court from infringing Plaintiff's Registered Trademarks.

117.    Plaintiff has no adequate remedy at law.

118.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting the Tenant Defendants from using Plaintiff's Registered Trademarks or any marks identical and/or confusingly similar thereto, for any purpose, and to recover from the Tenant Defendants all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by the Tenant Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C.  § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### THIRD CAUSE OF ACTION

### FEDERAL TRADEMARK DILUTION AGAINST THE TENANT DEFENDANTS
### 15 U.S.C. § 1125(C)

119.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

120.    Plaintiff is the exclusive owner of its Registered Trademarks as set forth above.

24

121.    The Tenant Defendants' use of Plaintiff's Registered Trademarks on the counterfeit goods they sell constitutes the Tenant Defendants' commercial use in commerce of Plaintiff's Registered Trademarks.

122.    These marks have been used for years and are so globally recognized and associated with Plaintiff that they are entitled to be recognized as famous and distinctive under 15 U.S.C. §1125(c).

123.    Plaintiff's Registered Trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with the Plaintiff and its distinctive reputation for high quality. The purchasing public is likely to attribute to Plaintiff the Tenant Defendants' use of Plaintiff's Registered Trademarks as a source of origin, authorization and/or sponsorship for the products the Tenant Defendants sell, and further, purchase the Tenant Defendants' products in the erroneous belief that the Tenant Defendants are associated with, sponsored by or affiliated with Plaintiff, when they are not.

124.    Plaintiff has not authorized or licensed the use of Plaintiff's Registered Trademarks to the Tenant Defendants.

125.    The Tenant Defendants' unauthorized use of Plaintiff's Registered Trademarks in their marketing, sale and distribution of counterfeit products are diluting the distinctive quality of the Plaintiff's Registered Trademarks and the goodwill associated therewith in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

126.    Such conduct has injured Plaintiff and that injury will continue unless the Court enjoins the Tenant Defendants from committing further wrongful acts.

607074217.1

127.    Upon information and belief, the Tenant Defendants intentionally and willfully utilized Plaintiff's Registered Trademarks and traded on Plaintiff's reputation and goodwill.

128.    Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts by the Tenant Defendants in an amount thus far not determined.

**FOURTH CAUSE OF ACTION**

**FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING AGAINST
THE TENANT DEFENDANTS
15 U.S.C. §1125 (a)**

129.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

130.    The Tenant Defendants have, in connection with their goods, used in commerce, and continue to use in commerce, Plaintiff's Registered Trademarks.

131.    The Tenant Defendants have affixed, applied and used in connection with their sale of goods false designations of origin and false and misleading descriptions and representations, including the Plaintiff's Registered Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by Plaintiff of the goods sold by the Tenant Defendants.

132.    The Tenant Defendants use one or more of the Plaintiff's Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiff.

133.    The Tenant Defendants' use of Plaintiff's Registered Trademarks on the counterfeit goods constitutes false descriptions and representations tending to falsely describe or

represent the Tenant Defendants and their products as being authorized, sponsored, affiliated or associated with Plaintiff.

134.    The Tenant Defendants use one or more of Plaintiff's Registered Trademarks on counterfeit goods with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high quality reputation of Plaintiff and to improperly appropriate for themselves the valuable trademark rights of Plaintiff.

135.    The Tenant Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent the Tenant Defendants' products as those of Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

136.    The Tenant Defendants' wrongful acts will continue unless enjoined by this Court.

137.    Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts in an amount thus far not determined.

## FIFTH CAUSE OF ACTION

### INJURY TO BUSINESS REPUTATION AGAINST THE TENANT DEFENDANTS
### NY GBL § 360-1

138.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

139.    Due to Plaintiff's extensive sales and significant marketing and promotional activities, Plaintiff's Registered Trademarks have achieved widespread acceptance and recognition among the consuming public throughout the United States.

27

140.    Plaintiff's Registered Trademarks are arbitrary and distinctive and identify Plaintiff as the source and origin of the goods on which Plaintiff's Registered Trademarks appear.

141.    The Tenant Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, in violation of New York General Business Law § 360-1.

142.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting the Tenant Defendants from using Plaintiff's Registered Trademarks, and to recover all damages, including attorneys' fees, that Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by the Tenant Defendants as a result of their infringing acts alleged above in an amount not yet known as well as the costs of this action.

## SIXTH CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT AGAINST THE TENANT DEFENDANTS

143.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

144.    Plaintiff owns all right, title, and interest in and to Plaintiff's Registered Trademarks, including all common law rights in those marks.

145.    The Tenant Defendants, without Plaintiff's authorization, have used and are continuing to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to Plaintiff's Registered Trademarks.

607074217.1

146.    The Tenant Defendants' foregoing acts are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether the Tenant Defendants' goods originate from, are affiliated with, sponsored by, or endorsed by Plaintiff.

147.    The Tenant Defendants' acts constitute trademark infringement in violation of the common law of the State of New York.

148.    Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of the Tenant Defendants' unlawful acts unless they are permanently enjoined from their unlawful conduct.

149.    Plaintiff has no adequate remedy at law.

### SEVENTH CAUSE OF ACTION

**CONTRIBUTORY TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT AND FALSE DESIGNATIONS OF ORIGIN AGAINST DEFENDANT MULBERRY STREET PROPERTIES CORP.**

150.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

151.    The Tenant Defendants have committed direct acts of trademark counterfeiting, trademark infringement, use of false designations of origin and trademark dilution.  Counterfeit MK merchandise has been displayed and offered for sale and sold by the Tenant Defendants on the Property.

152.    At all relevant times, Mulberry Properties has had actual, specific knowledge that the Tenant Defendants and others were using the Property as a base of operation from which to

sell counterfeit trademarked goods – including goods of inferior quality – that bear counterfeit versions of Plaintiff's Registered Trademarks.

153.    Despite such direct and specific knowledge, Mulberry Properties has knowingly continued to permit and condone the Tenant Defendants' use of the Property as a base of operation from which to sell goods bearing counterfeit versions of Plaintiff's Registered Trademarks.

154.    Mulberry Properties has turned a blind eye to the activities of the Tenant Defendants on their Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Registered Trademarks are routinely sold.

155.    Mulberry Properties receives direct financial benefit through the lease of the Property.

156.    At all relevant times, Mulberry Properties has had the ability to prevent others from using the Property as a base from which to sell goods bearing counterfeit versions of Plaintiff's Registered Trademarks yet Mulberry Properties has neglected to do so.

157.    Despite having this ability, Mulberry Properties has repeatedly failed to take reasonably adequate measures to ensure that the Property is not used by sellers of counterfeit goods.

158.    Mulberry Properties has provided the Tenant Defendants with the means and instrumentality necessary to sell counterfeit goods from the Property and has benefited from the sale of counterfeits.

607074217.1

159.    Acting with the foregoing actual and constructive knowledge, Mulberry Properties has enabled, facilitated, perpetuated and materially contributed to the Tenant Defendants' unlawful acts.

160.    Mulberry Properties is contributorily liable to Plaintiff for its participation in the unlawful acts of the Tenant Defendants.

161.    The counterfeiting of Plaintiff's Registered Trademarks is to the great and irreparable damage of Plaintiff and Plaintiff believes, as indicated, that Mulberry Properties will continue to benefit from counterfeiting activities unless enjoined by this Court.

162.    Mulberry Properties' activities are likely to lead to and result in confusion, mistake or deception and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or are otherwise connected or affiliated with Mulberry Properties' commercial and business activities, all to the detriment of Plaintiff.

163.    As a result of Mulberry Properties' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Mulberry Properties is restrained by this Court.

164.    Mulberry Properties' acts have damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

165.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Mulberry Properties from enabling the sale of counterfeit merchandise bearing the Plaintiff's Registered Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Mulberry Properties all damages, including attorneys' fees that Plaintiff has sustained and will sustain.

607074217.1

166.    As a result of such infringing acts, Plaintiff is entitled to all gains, profits and advantages obtained by Mulberry Properties as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## EIGHTH CAUSE OF ACTION

### PRIVATE RIGHT OF ACTION AGAINST MULBERRY STREET PROPERTIES CORP. N.Y. REAL PROP. L. § 231

167.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

168.    The manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks is an unlawful trade or business under New York law.

169.    Mulberry Properties has knowingly leased or given possession of the Property to be used or occupied, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

170.    Mulberry Properties has knowingly permitted the Property to be used, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

171.    By reason of the foregoing, pursuant to N.Y. Real Prop. L. § 231(2), Mulberry Properties is jointly and severally liable to Plaintiff for all damages resulting from the unlawful trademark counterfeiting activities of the Tenant Defendants.

607074217.1

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment against Defendants as follows:

*Against the Tenant Defendants:*

A.    Granting temporary, preliminary and permanent injunctive relief restraining the Tenant Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

(1)    Using Plaintiff's Registered Trademarks or any marks confusingly similar thereto, in connection with the manufacturing, distribution, advertising, offering for sale, and/or sale of merchandise;

(2)    Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of the Tenant Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with, Plaintiff;

(3)    Otherwise infringing upon Plaintiff's Registered Trademarks;

(4)    Otherwise diluting Plaintiff's Registered Trademarks;

(5)    Unfairly competing with Plaintiff; and

(6)    Leasing or subleasing space to any tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of products that bear Plaintiff's Registered Trademarks, or any other marks confusingly similar to substantially similar thereto;

B.    Awarding Plaintiff all of the Tenant Defendants' profits and all damages sustained by Plaintiff as a result of the Tenant Defendants' wrongful acts, and such other

compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

C.      Awarding treble damages in the amount of the Tenant Defendants' profits or Plaintiff's damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

D.      Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b); and

E.      Awarding Plaintiff statutory damages pursuant to 15 U.S.C. §1117(c).

***Against Defendant Mulberry Street Properties Corp.,***

A.      Granting temporary, preliminary and permanent injunctive relief restraining Mulberry Properties, its agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from leasing or subleasing space to any tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of products that bear Plaintiff's Registered Trademarks, or any other marks confusingly similar to or substantially similar thereto; and

B.      Finding Defendant Mulberry Street Properties Corp., contributorily liable for the Tenant Defendants' counterfeiting of Plaintiff's Registered Trademarks and for any damages resulting from the Tenant Defendants' activities complained of herein, including, but not limited to, actual damages, statutory damages, treble damages, interest, costs, disbursements and attorneys fees.

***Against all Defendants***

A.      Awarding actual damages suffered by Plaintiff as a result of Defendants' acts;

607074217.1

    B.     Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

    C.     Ordering Defendants to disgorge their profits;

    D.     Awarding Plaintiff punitive damages in connection with their claims under New York law; and

    E.     That the Court award Plaintiff such other and further relief as it deems proper.

Dated: New York, New York
       July \_\_\_, 2015

**BAKER & HOSTETLER LLP**

By: _Heather J. McDonald_

Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
45 Rockefeller Plaza
New York, New York  10111
(212) 589-4200
(212) 589-4201 - Fax
Counsel for Plaintiff
Michael Kors, LLC

35

607074217.1